**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LUANNE THERESA YANNI,

      Plaintiff,

v.                                       No. CV 18-1195 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Luanne Theresa Yanni's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the "Motion"), (Doc. 17), filed May 23, 2019; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 22), filed August 27, 2019; and Ms. Yanni's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (the "Reply"), (Doc. 23), filed September 9, 2019.

Ms. Yanni filed an application for supplemental security income under Title XVI of the Social Security Act on January 4, 2012, with a protective filing date of December 14, 2011. (Administrative Record "AR" 172). Ms. Yanni claimed she was limited in her ability to work due to head, neck, shoulder and back injuries resulting from a slip and fall accident. (AR 198). Ms. Yanni's application was initially denied on May 7, 2012, *id.*, and upon reconsideration on March 7, 2013. (AR 115).

Ms. Yanni requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 25, 2013, before ALJ Myriam C. Fernandez Rice. (AR

44, 119, 122). Ms. Yanni, represented by attorney Rose Eileen Provan, and Leslie

White, a non-partial vocational expert ("VE"), testified at the hearing. (AR 44). On

February 5, 2014, ALJ Fernandez Rice issued her decision, finding Ms. Yanni not

disabled at any time between her protective filing date, December 14, 2011, through the

date of her decision. (AR 38). Ms. Yanni requested review of the ALJ's decision by the

Appeals Council, which was denied, (AR 1), thus making ALJ Fernandez Rice's opinion

the Commissioner's final decision for purposes of judicial review.

On October 19, 2015, Ms. Yanni filed a complaint in the United States District

Court for the District of New Mexico ("District Court"), requesting review of ALJ

Fernandez Rice's decision. (AR 1127). Ms. Yanni alleged ALJ Fernandez Rice erred in

applying the appropriate legal standards in evaluating opinions of Ms. Yanni's treating

physician and finding Ms. Yanni's residual functional capacity ("RFC") and credibility

determinations to be contrary to substantial evidence. The District Court noted that the

consultative psychologist, Paula Hughson, M.D., opined that Ms. Yanni has moderate

limitations in social functioning and maintaining concentration, persistence, and pace.

(AR 34). The District Court also acknowledged that Ms. Yanni's treating physician,

Thomas Whalen, M.D., found much greater restrictions on Ms. Yanni's ability to work,

even though Dr. Whalen submitted his opinion on these restrictions after ALJ

Fernandez Rice made her decision. (AR 1207-09). The District Court found the ALJ

afforded significant weight to the medical opinion of Dr. Hughson, while being "unable to

indicate what weight, if any," the ALJ would afford Ms. Yanni's treating physician. (AR

1208-09). Remanding the case for further administrative proceedings, the District Court

reasoned "a treating physician's opinion must generally be accorded controlling weight,

[and that in this case, it] is not simply a conflict between evidence on equal footing." (AR 1201, 1208 (citing *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)). The Appeals Council subsequently instructed the ALJ to offer Ms. Yanni the opportunity for a hearing and issue a new decision. (AR 1213).

While her District Court case was pending, Ms. Yanni submitted another claim for supplemental security income and disability insurance benefits on September 2, 2015. (AR 1213). Pursuant to the District Court's remand order, dated June 21, 2017, the Appeals Council directed the ALJ to consolidate her claim in the original case with the subsequent claims for Title II and XVI benefits, filed on September 2, 2015, thus creating a single electronic record. *Id.*

On September 5, 2018, Ms. Yanni appeared before ALJ Stephen Gontis with attorney Laura Johnson and non-partial VE Kristie Wilson. (AR 1048). ALJ Gontis issued his decision on September 21, 2018, finding Ms. Yanni not disabled prior to January 15, 2016. (AR 1037). ALJ Gontis further concluded that Ms. Yanni became disabled when she changed age categories on January 15, 2016, from a "younger individual" to an "individual closely approaching advanced age." *Id.* Ms Yanni then requested review by the Appeals Council, which was denied, making ALJ Gontis' opinion the Commissioner's final decision for purposes of this appeal.

Now, Ms. Yanni, represented by attorney Laura Johnson, argues in her motion that: (1) ALJ Gontis failed to comply with the District Court's instructions directing remand and proper analysis of the medical opinions of treating physician Dr. Whalen; (2) ALJ Gontis failed to account for all of the moderate limitations assessed by non-examining psychiatric consultant Scott Walker, M.D.; (3) ALJ Gontis failed to give

proper reasons for rejecting the assessments of 96-6p consultative evaluator, psychiatrist Dr. Hughson; and therefore this case should be remanded for the immediate payment of benefits. (Doc. 17 at 2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record.

The Court finds that Ms. Yanni's Motion should be **GRANTED** and this matter be **REMANDED** for further proceedings because ALJ Gontis violated the mandate rule by failing to adequately explain why he only gave partial weight to Dr. Whalen's opinions.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal*, 331 F.3d at 760. The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final

decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520,

416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Yanni claimed she was limited in her ability to work since September 30, 2005, due to head, neck, shoulder and back injuries from a slip and fall accident. (AR 76). At step one, ALJ Gontis determined that Ms. Yanni had not engaged in substantial gainful activity since September 30, 2005, the alleged disability onset date. (AR 1021). At step two, ALJ Gontis found that Ms. Yanni had the following severe impairments: bipolar disorder; post-traumatic stress disorder ("PTSD"); carpal tunnel syndrome; and degenerative disc disease of the lumbar spine. (AR 1022).

At step three, ALJ Gontis determined that none of Ms. Yanni's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§

---

1. 20 C.F.R. pt. 404, subpt. P, app. 1.

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 1022). ALJ

Gontis then found that Ms. Yanni has the RFC to perform a limited range of sedentary

work limiting Ms. Yanni to: lift and/or carry ten pounds occasionally and less than ten

pounds frequently; sit for six hours and stand and/or walk for two hours in an eight-hour

work day; handle, finger, and feel frequently bilaterally; occasionally climb ramps and

stairs and never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch,

and crawl; work in environments with significant vibration only occasionally; be limited to

simple and routine tasks; be able to respond appropriately to supervisors frequently and

to co-workers and the public occasionally, and be allowed to take normal breaks to

accommodate her time off task. (AR 1024).

In formulating Ms. Yanni's RFC, ALJ Gontis stated that he considered Ms.

Yanni's symptoms and the extent to which those symptoms can reasonably be

accepted as consistent with objective medical and other evidence, as required by 20

C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. *Id.* ALJ Gontis

also stated that he considered opinion evidence consistent with the requirements of 20

C.F.R. §§ 404.1527 and 416.927. (AR 1025). ALJ Gontis concluded that some of Ms.

Yanni's impairments could be expected to cause her alleged symptoms, but he found

the intensity, persistence and limiting effects that Ms. Yanni described were not entirely

consistent with the evidence in the record. *Id.*

In evaluating the medical evidence in the record, ALJ Gontis stated he gave only

"limited weight" to the opinion of the State agency psychiatric consultant, Scott R.

Walker, M.D. at the initial level, on February 9, 2012, but significant weight to the

opinions of Dr. Walker, and Aroon Suansilppongse, M.D., at the reconsideration level on

July 25, 2016. (AR 1028). ALJ Gontis also gave "some weight" to the opinions of the State agency medical consultants, including Eileen M. Brady, M.D., Leah Holly, M.D., Jeanine Kwun, M.D., and consultative examiner, Dr. Raul Neftali Young-Rodriguez, M.D. (AR 1027-29). While giving Barry Diskant, M.D.'s opinion, only "some weight" regarding his assessment for light-level work, ALJ Gontis, gave Dr. Diskant's opinion "significant weight" regarding his assessment of moderate impairment for mental and behavioral disorders. (AR 1029). ALJ Gontis assigned varying weight to consultative psychological examinations conducted by Paula Hughson, M.D., giving "significant weight" to Dr. Hughson's February 15, 2013, examination, "limited weight" to Dr. Hughson's February 12, 2016, examination, and "some weight" to Dr. Hughson's August 20, 2018, examination. Lastly, ALJ Gontis gave only "partial weight" to Dr. Whalen's opinions, Ms. Yanni's treating physician. (AR 1030). ALJ Gontis also discussed Ms. Yanni's reported activities of daily living, and medical and mental health treatments. (AR 1033). Further, ALJ Gontis considered the third-party Function Reports completed by Ms. Yanni's mother. (AR 1032).

At step four, ALJ Gontis found that Ms. Yanni is unable to perform her past relevant work as an emergency medical technician, firefighter, or x-ray technician. (AR 1034-35). ALJ Gontis then moved to step five, noting that prior to January 15, 2016, Ms. Yanni was classified as a "younger individual" in accordance with the regulations. (AR 1035). Ms. Yanni subsequently changed age categories on January 15, 2016, and is now correctly classified as an "individual closely approaching advanced age." *Id.* At this step, ALJ Gontis also determined that Ms. Yanni has at least a high school education and is able to communicate in English. *Id.*

Further, ALJ Gontis stated that prior to the change of Ms. Yanni's age category, transferability of job skills was not material to the determination of disability in accordance with the Medical-Vocational Rules. *Id.* ALJ Gontis explained that if Ms. Yanni had the RFC to perform the full range of sedentary work, a finding of not disabled would be directed by Medical-Vocational Rules 201.21 and 201.28. (AR 1035). However, the ALJ found that Ms. Yanni's limitations impeded her ability to perform the full range of sedentary work. *Id.* Therefore, ALJ Gontis relied on the testimony of the VE to determine applicable jobs Ms. Yanni could have performed in the national economy. *Id.*

ALJ Gontis explained that under the current classification as an individual closely approaching advanced age, there are no jobs that exist in significant numbers in the national economy that Ms. Yanni can perform. (AR 1036-37). As a result, the ALJ concluded that, beginning on January 15, 2016, Ms. Yanni became "disabled" pursuant to Medical Vocational Rule 201.14. (AR 1037). However, ALJ Gontis explained that before January 15, 2016, a significant number of jobs existed in the national economy that Ms. Yanni could have performed. (AR 1035-36). Specifically, ALJ Gontis noted that VE Leslie White testified at the hearing that an individual with Ms. Yanni's same age, education, work experience, and RFC could have performed the jobs of touch-up screener, addresser, and document preparer. (AR 1036). After finding VE White's testimony to be consistent with the Dictionary of Occupational Titles ("DOT"), ALJ Gontis adopted VE White's testimony and concluded that because Ms. Yanni was capable of performing work existing in significant numbers in the national economy, she was not disabled prior to January 15, 2016, pursuant to 20 C.F.R. §§ 404.1569 and

416.969. (AR 1035).

## IV. Analysis

Ms. Yanni presents three arguments in her Motion before the Court. (Doc. 17).

First, Ms. Yanni argues ALJ Gontis violated the mandate rule by failing to comply with

the District Court instructions directing remand and proper analysis of the medical

opinions of her treating physician, Dr. Whalen. Then, Ms. Yanni argues ALJ Gontis

failed to account for all of the moderate limitations assessed by non-examining

psychiatric consultant Dr. Walker. Further, Ms. Yanni argues ALJ Gontis failed to give

proper reasons for rejecting the assessments of 96-6p consultative evaluator,

psychiatrist Dr. Hughson. As a result, Ms. Yanni argues this case should be remanded

for the immediate payment of benefits. (Doc. 17 at 2, 12-26).

### A. Medical Opinions of Treating Physician Thomas Whalen, M.D.

Ms. Yanni contends the ALJ erred in evaluating Dr. Whalen's opinions upon

remand from the District Court. *Id.* at 14-18. Specifically, Ms. Yanni claims ALJ Gontis

erred in assigning partial weight to Dr. Whalen's opinions. *Id.* The Commissioner

disagrees and argues the ALJ assigned proper weight to Dr. Whalen's opinion. (Doc. 22

at 12-16).

Although it is not required that an ALJ discuss every piece of evidence, he is

required to discuss, at a minimum, the weight assigned to each medical source opinion.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§

404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Of course, it is not necessary for an ALJ to

delineate the direct correspondence between an RFC finding and a specific medical

opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ

cannot "pick and choose" through a medical opinion, taking only the parts that are

favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d

1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to weigh the medical

source reports and provide "*appropriate explanations*" for accepting or rejecting the

opinions. SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see* SSR 96-8p, 1996

WL 374184, at *7 (July 2, 1996) (finding that the ALJ "must . . . *explain how any material*

*inconsistencies* or ambiguities in the evidence in the case record *were considered and*

*resolved.*") (emphasis added).

 To aid in the ALJ's analysis, the Regulations set forth the following factors that

should be considered when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01

(10th Cir. 2003). However, not every factor is applicable in every case, nor should all six

factors be seen as absolutely necessary. What is absolutely necessary, though, is that

the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any

subsequent reviewers"—for the weight she ultimately assigns to the opinions. *Langley*,

373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*,

385 F.3d 1268, 1275 (10th Cir. 2004); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

2007).

 "[T]o the extent there are differences of opinion among the medical sources, the

*ALJ must explain the basis for adopting one and rejecting another*, *with reference to the factors governing the evaluation of medical-source opinions* set out in 20 C.F.R. § [404.1527(c)]." *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012) (unpublished) (emphasis added); *see Sisom v. Colvin*, 512 F. App'x 762, 766-67 (10th Cir. 2013) (unpublished) (reversing where ALJ failed to provide a legally sufficient explanation for adopting the non-examining opinions over an examining opinion).

In determining disability, Social Security regulations require that the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. A treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal*, 331 F.3d at 762. An ALJ must follow a two-step analysis when evaluating and weighing opinions from treating sources. *Watkins*, 350 F.3d at 1300-01. First, the ALJ must decide whether the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the answer to the first inquiry is in the affirmative, the ALJ then determines whether the physician's opinion is "not inconsistent with the other substantial evidence" in the record. *Id.* In cases where both criteria are satisfied, the treating source's opinion is entitled to controlling weight. *Id.*

Even if a treating source's opinion is not entitled to controlling weight, it should

still receive deference. SSR 96-2P, 1996 WL 374188, at *4. In deciding how much weight to give the opinion, the ALJ should consider the 20 C.F.R. §§ 404.1527, 416.927 factors. *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Id.* (citing *Watkins*, 350 F.3d at 1300-01); SSR 96-2p, 1996 WL 374188 at *5. Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d at 1267. Thus, this Court may only consider the reasoning proffered by the ALJ herself, and not any post hoc rationale provided by the Commissioner. *Robinson*, 366 F.3d at 1084 (citations omitted).

Here, ALJ Gontis referenced Dr. Whalen's May 6, 2005, evaluation which opined that Ms. Yanni can return to work that does not require lifting more than 25 pounds and that requires no frequent bending. (AR 1028). ALJ Gontis gave only some weight to Dr. Whalen's evaluation, reasoning that the objective medical findings and Ms. Yanni's

statements of difficulties with prolonged standing and lifting are more consistent with sedentary level work. ALJ Gontis also referenced Dr. Whalen's April 9, 2014, medical source statement, in which Dr. Whalen opined that Ms. Yanni is *inter alia*: moderately impaired in her abilities to maintain concentration for extended periods, work in coordination with or proximity to others without being distracted by them, and make simple work-related decisions; and markedly limited in her abilities to perform activities within a schedule, maintain regular attendance, maintain physical effort for long periods, and sustain an ordinary routine without special supervision. *Id.* ALJ Gontis then referenced Dr. Whalen's August 6, 2018, medical source treatment notes and August 28, 2018, medical assessment of ability to do work-related activities. In these two evaluations, Dr. Whalen opined that Ms. Yanni must periodically alternate sitting and standing to relieve pain or discomfort, and that she is moderately limited in her abilities to maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from pain or fatigue. (AR 1029-30).

ALJ Gontis gave only partial weight to the April 9, 2014, August 6, 2018, and August 28, 2018, evaluations, reasoning that: (1) Dr. Whalen provided no explanation for the extent of the physical and mental limitations he imposed; (2) Dr. Whalen's limitations were not supported by longitudinal evidence, including his own treatment notes, and Ms. Yanni's engagement in daily activities with help of prescribed medication; and (3) Dr. Whalen's opinions were markedly inconsistent with his earlier opinion on May 6, 2005, and with the independent medical evaluation by Dr. Diskant. Ms. Yanni now asserts that each of ALJ Gontis' three purported reasons for not giving Dr. Whalen's opinions controlling weight are legally insufficient. The Court will address

14

each of these arguments in turn.

### i. Lack of Explanations for Dr. Whalen's Evaluations

The first issue is whether ALJ Gontis followed the District Court's remand order, and articulated specific, legitimate explanations for assigning only partial weight to Dr. Whalen's April 9, 2014, (AR 970-71), August 6, 2018, (AR 1949-50), and August 28, 2018, (AR 2157-58). *See* (AR 1031). ALJ Gontis stated that "[Dr. Whalen] provide[d] no explanation for the extent of the physical and mental limitations he impose[d]." (AR 1031). Ms. Yanni claims Dr. Whalen's evaluations of her physical and mental limitations were formed based on the finding of "multi-level disc herniations with annular tears." (Doc. 17 at 15 (citing to AR 970)). The Commissioner concedes that Dr. Whalen utilized the medical finding of "multi-level disc herniations with annular tears" as a basis for his evaluations. (Doc. 22 at 12 (citing AR 970)). The Commissioner further asserts that "objective studies showed that [Ms. Yanni's disc herniations] were not as severe as Dr. Whalen's opinion would suggest," referring to Dr. Whalen's earlier medical evaluations from 2005, (*see* AR 340), 2006, (AR 566), and 2007, (AR 534). (Doc. 22 at 12).

An ALJ must follow a two-step analysis when evaluating and weighing opinions from treating sources. *See Watkins*, 350 F.3d at 1300-01. In cases where both criteria are satisfied, the treating source's opinion is entitled to controlling weight. *Id.* In rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on his own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.* at 1248.

Additionally, an ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser v. Astrue*, 638 F.3d at 1331 (citing *Watkins*, 350 F.3d at 1300-01); SSR 96-2p, 1996 WL 374188 at *5. The Commissioner's arguments cannot save the ALJ's determination because the Court may not stray from the four corners of the decision. The Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in *post hoc* rationalization. *Robinson*, 366 F.3d at 1084-85.

By reasoning that Dr. Whalen did not provide any "explanation" for the extent of the physical and mental limitations imposed, ALJ Gontis appears to indicate that Dr. Whalen's evaluations failed the first step of the *Watkins* analysis. (AR 1030). However, ALJ Gontis omits reference to various means Dr. Whalen used in making his determinations. In his April 9, 2014, evaluation, Dr. Whalen indicated that his finding of "multi-level disc herniations with annular tears" supported his medical assessment of ability to do work-related activities. (AR 970). In both his August 6, 2018, and August 28, 2018, evaluations, Dr. Whalen indicated that for his assessments of lifting, standing and walking, sitting, manipulative limitations, postural limitations, and limitations affecting non-physical work activities, he utilized observations, records and objective testing. (AR 1949-50, 2157-58). And for Dr. Whalen's August 6, 2018, and August 28, 2018, assessments of use of feet, and outlook, he utilized observations and objective testing. *Id.* ALJ Gontis omits reference to these findings.

This Court finds that in his first reason for assigning Dr. Whalen's evaluations

only partial weight, ALJ Gontis failed to articulate a specific, legitimate explanation for his decision. An ALJ may not reject the opinion based on his own credibility judgments, speculation, or lay opinion. *McGoffin*, 288 F.3d at 1252. Furthermore, the Commissioner's attempt to provide more context to ALJ Gontis' decision by referencing Dr. Whalen's earlier medical evaluations from 2005, (*see* AR 340), 2006, (AR 566), and 2007, (AR 534), is an impermissible *post hoc* rationalization because these references were absent from ALJ Gontis' decision. (Doc. 22 at 12).

### ii. Lack of Support in Longitudinal Record

Second, Ms. Yanni asserts that ALJ Gontis incorrectly found that Dr. Whalen's limitations in his April 9, 2014, August 6, 2018, August 28, 2018, evaluations were unsupported by longitudinal evidence. (Doc. 17 at 15 (citing AR 1030)). The Commissioner argues that ALJ Gontis did not err because Dr. Whalen's limitations conflict with his own treatment notes discussing Ms. Yanni's pain relief through her use of oxycodone, Percocet, and Roxicet. (Doc. 22 at 13).

The *Kenney v. Berryhill* Court found, "simply stating that [the treating physician's] opinion is not support[ed] by the longitudinal record or Plaintiff's daily activities, is not sufficient"—this "statement alone is conclusory and does not provide an explanation for rejecting [the treating physician's] opinion." No. CIV 17-0104 KBM, 2018 WL 327240, at 7 (D.N.M. Jan. 8, 2018) (unpublished) (finding that ALJ's weight determination was adequately supported by claimant's: medication helping her depressed moods; mental status examinations showing adequate memory and concentration; and treating physician being unfamiliar with the definition of disability contained in the Social Security Act); *see Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001).

Here, in finding Dr. Whalen's 2014, and 2018, limitations were unsupported by longitudinal evidence, ALJ Gontis only relied on Dr. Whalen's March 27, 2017, medical notes, to illustrate oxycodone gave Ms. Yanni about 80 percent relief of her pain and allowed her to complete her activities of daily living. (AR 1027, 1030). As mentioned above, it is conclusory, and thus impermissible, for an ALJ to solely assign diminished weight to a plaintiff's treating physician because the longitudinal evidence, or plaintiff's daily activities, do not support the treating physician's assessment.

Nonetheless, even if ALJ Gontis' reason for assigning partial weight to Dr. Whalen's evaluations was non-conclusory, this Court finds that by selecting only the March 27, 2017, medical notes, ALJ Gontis "pick[ed] and chose[]" a specific medical opinion that was "favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1288. Ms. Yanni correctly suggests ALJ Gontis did not address the September 30, 2005, (AR 334), December 15, 2008, (AR 622), March 7, 2012, (AR 708), April 26, 2016, (AR 1815), and June 23, 2017, (AR 178), medical notes, which reflected varying information regarding Ms. Yanni's pain levels and physical abilities. (Doc. 17 at 15-17).

Considering the *Kenney* decision, and alternatively, because ALJ Gontis failed to illustrate how the material inconsistencies in evidence were considered and resolved, this Court finds that in his second reason for assigning Dr. Whalen's evaluations only partial weight, ALJ Gontis failed to articulate a specific, legitimate reason for his decision. The Commissioner's reference to Ms. Yanni's pain relief caused by Percocet and Roxicet was not cited by ALJ Gontis, and as such constitutes post hoc justification outside of ALJ Gontis' decision. *Robinson*, 366 F.3d at 1084-85.

### iii. Inconsistencies Between Opinions

Lastly, Ms. Yanni asserts that ALJ Gontis erred in giving partial weight to Dr. Whalen's April 9, 2014, August 6, 2018, August 28, 2018, evaluations because his medical opinions were "markedly inconsistent" with his earlier opinion from May 6, 2005, as well as opinions of Drs. Diskant and Young-Rodriguez. (Doc. 17 at 17-18). The Commissioner claims that while ALJ Gontis found "Dr. Whalen's later opinions [to be] 'markedly inconsistent with his earlier opinion on May 6, 2005,'" (Doc. 22 at 15 (citing AR 1030)), Dr. Whalen's 2005 examination findings "were remarkably similar to his examination findings in late 2017," and that "objective studies showed generally stable findings [of degenerative disc disease.]" (Doc. 22 at 15). The Commissioner also briefly references Dr. Diskant's and Dr. Young-Rodriguez's findings as being inconsistent with Dr. Whalen's opinions. (Doc. 22 at 16).

Generally, "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Drapeau*, 255 F. 3d at 1214 (citing *Frey v. Brown*, 816 F. 2d 508, 515 (10th Cir. 1987)). Social Security Ruling 96-8P outlines that the ALJ must "*explain* how any material inconsistencies or ambiguities in the evidence in the case record were *considered and resolved*." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (emphasis added). In *Scrivner v. Berryhill*, this Court found that in making his decision to discount a treating physician's opinion, the *Scrivner* ALJ relied on the treating physician's previous medical note, which showed improvement in the claimant's pain levels and mood. 323 F.R.D. 663, 670-71 (D.N.M. 2018). This Court subsequently held that given other evidence in the record, "the ALJ's failure to discuss the medical evidence that support[ed the treating physician's] findings without explanation [was]

legal error." *Id.*; *see Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

Here, ALJ Gontis gave some weight to Dr. Whalen's May 6, 2005, evaluation, finding that "objective medical findings and the claimant's statements" aligned more consistently with sedentary, instead of light work. (AR 1028). Then, ALJ Gontis stated that Dr. Whalen's 2014, and 2018 "opinions are markedly inconsistent with [Dr. Whalen's] earlier opinion from May 6, 2005, [which stated] the claimant had a 25-pound lifting limitation and that she was precluded from frequent bending." (AR 1030). ALJ Gontis did not provide any further explanations, nor referenced any of Dr. Whalen's other medical notes.

Next, assigning partial weight to Dr. Whalen's April 9, 2014, August 6, 2018, and August 28, 2018, evaluations, ALJ Gontis merely stated that "[Dr. Whalen's] opinion that the claimant can perform no reaching is not consistent with the independent medical evaluation by Dr. Diskant . . . or [Dr. Young-Rodriguez's] consultative examination report . . . ." (AR 1030). However, ALJ Gontis' sole mention of Dr. Diskant refers to the independent medical evaluation dated November 20, 2008, where Dr. Diskant evaluated Ms. Yanni to be able to return to work in a light physical demand category job and have a moderate impairment for mental and behavioral disorders. (AR 1028). While ALJ Gontis gave only some weight to Dr. Diskant's assessment for light level work, he gave Dr. Diskant's assessment of moderate impairment for mental and behavioral disorders significant weight. (AR 1029-30). ALJ Gontis supported these decisions through a single-sentence comparison of Dr. Diskant's opinion with "the record as a

whole." (AR 1028-29).

Furthermore, ALJ Gontis' only mention of Dr. Young-Rodriguez refers to the April 13, 2012, consultative examination report, where Dr. Young-Rodriguez opined that the claimant had only a slight limitation in the lumbar spine. (AR 1029). ALJ Gontis gave this report some weight because Ms. Yanni's "treatment records, her own statements, and her daily activities, are more consistent with sedentary level work, especially later into the relevant period." *Id.*

Given such sparse explanations, and existing inconsistencies within the record, this Court is not persuaded that ALJ Gontis provided specific, legitimate explanations for assigning partial weight to Ms. Yanni's treating physician's April 9, 2014, August 6, 2018, August 28, 2018, evaluations, or about how the material inconsistencies in the evidence were considered and resolved.

B.   *Ms. Yanni's Request for an Immediate Award of Benefits*

Ms. Yanni requests the Court reverse the decision of the Commissioner and remand the case for an immediate award of benefits. (Doc. 17 at 2, 25-26). The decision of whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). To make this decision, the Court considers the length of time the matter has been pending and whether additional fact-finding would serve any useful purpose or merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, the Court notes Ms. Yanni's application for benefits has been pending since December 2011. (AR 172). However, this Court cannot say that there is

substantial and uncontradicted evidence in the record that indicates Ms. Yanni is disabled. *See Hudman v. Astrue*, No. 1:08-cv-00643-RLP, at *17 (D.N.M. filed Apr. 16, 2009) (unpublished). Under these circumstances, the Court will take heed not to assume the role of fact-finder and substitute its judgment for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will therefore not remand for an immediate award of benefits.

## V.      Conclusion

For the foregoing reasons, the Court finds that ALJ Gontis violated the mandate rule by failing to provide adequate, specific explanations for giving partial weight to Ms. Yanni's treating physician's opinions. Finding enough evidence to remand this matter for further administrative proceedings, this Court abstains from ruling on Ms. Yanni's remaining arguments.

**IT IS THEREFORE ORDERED** that Mr. Yanni's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 17), is **GRANTED** and this case is to be **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE